### MUMFORD and others *against* J. B. MURRAY.

An assignment was made, in 1800, by a debtor, of property to the defendant, in *trust* for certain creditors of the assignor named, who should become parties to the deed in twelve months, &c. A bill was filed by one of the creditors, in 1821, against the defendant, as trustee, for an account, &c.: *Held*, that the defendant could not, after the lapse of twenty years, without any assertion of claim on the part of the other creditors named, object, at the hearing, that the other *cestui que trusts* were not made parties; especially, as the defendant had admitted, that all the creditors having priority to the plaintiff, under the assignment, had been satisfied, and had promised to account to the plaintiff.

A trustee who suffers funds to pass improperly into the hands of his co-trustee, is chargeable for any loss arising from such negligence or abuse of trust.

A defendant who suffered moneys received under an order in favour of himself and the plaintiff, as partners, to be blended with moneys received by him under a subsequent *trust deed* to him and another, to pass into the hands of his co-trustee, was held accountable to the plaintiff, notwithstanding the plaintiff, as one of the *cestui que trusts*, had joined in a discharge of such co-trustee, but without a knowledge of the fact of the first money being so blended with moneys received under the trust deed.

A partner who goes abroad on his personal affairs, is not entitled to charge his personal expenses to the co-partnership.

A *trustee* is not entitled to commissions. A trustee who mingles the trust money with his own, and uses it as his own, must pay *interest*.

BILL of *revivor and supplement*, (filed *March* 3, 1821,) by the *administrators* of John P. Mumford, deceased,

VOL. VI.                    1

1822.

MUMFORD
v.
MURRAY.

*Nov.* 10*th*, 1821, and *Jan.* 3*d*, 1822.

1822.

MUMFORD
v.
MURRAY.

against the defendant. The material parts of the original pleadings were as follows : The original bill, filed by the intestate, in *September*, 1818, stated, that he, and the defendant, were formerly partners in trade, under the firm of *Murray & Mumford*, in the city of *New-York;* that *Robert Murray & Co.*, being largely indebted to *M. & M.* and others, on the 23d of *March*, 1798, executed an assignment of certain property, therein specified, to the defendant, and *John Innes Clark, in trust*, to pay the defendant and *Clark* the debts due to them, and such other creditors of the assignors, as they should, within twelve months thereafter, by deed, appoint and declare. That on the 24th of *March*, 1798, the assignees made a declaration in writing of the uses of the trust property ; and on the 21st of *March*, 1799, they revoked the appointments so made, and declared other and further trusts ; and, again, on the 22d of *March*, 1799, made another declaration of trusts, in respect to the property so assigned to them ; and, afterwards, on the 31st of *May*, 1800, made a final instrument, reciting the former deeds, and appointing and declaring the uses and trusts, in relation to the property so assigned to them.

That *Robert Murray*, afterwards, became a bankrupt, and his assignees filed a bill against the defendant and *Clark*, as trustees of *Robert Murray & Co.*, in *November*, 1807 ; and the defendant became the sole trustee, and the suit was revived against the executors of *Clark*. That on the second of *August*, 1809, an agreement was entered into, between the assignees of the bankrupt, the executors of *Clark*, and *M. & M.*, by which the executors of *C.* agreed to pay the balance which might be found due from their testator, in certain ands, and the defendant agreed to account for the trust moneys which he had received ; and, after paying his own demands and expenses, then to pay the sums due to *M. & M.*, leaving the other *cestui que trusts* to be paid out of the proceeds of the lands to

be conveyed by the executors of *C.* That *C.'s* executors, pursuant to that agreement, which was made a rule of Court, on the 2d of *August*, 1809, by consent of parties, accounted for the trust moneys which had come to his hands, amounting to 78,328 dollars and 55 cents ; of which sum 6,000 dollars was paid in cash, and the residue in lands, pursuant to the agreement ; and the estate of *C.* thereby became exonerated and discharged. That all the other *cestui que trusts* having claims prior to *M. & M.*, were paid off prior to the discharge of *C.'s* executors, and *M. & M.* were, then, entitled to be first paid out of the trust funds. That the amount which came to the hands of the defendant out of the trust funds, prior to *October* 2, 1805, was 80,966 dollars and 22 cents. That of this sum, 43,041 dollars and 39 cents, were, as the plaintiff believed, received in *June* and *August*, 1801, on bills of exchange on *London*, delivered by *Clark* to the defendant, as one of the firm of *M. & M.*, and for their account, as a payment to them under the trust deeds ; and which sum was accounted for by the defendant to *M. & M.* That from this period until *May*, 1809, the defendant evaded all inquiries of the plaintiff, as to the state of the funds, always affirming, in answer to his letters, and inquiries on the subject, that all the funds were in the hands of his co-trustee, *Clark*, and that the defendant had received none of the trust moneys, thereby deceiving the plaintiff, and keeping him in the dark as to the true state of the funds. That on the 23d of *May*, 1809, the plaintiff having discovered, that there were moneys arising from the trust property in the hands of the defendant, to which the plaintiff was entitled, the defendant executed a written agreement, acknowledging that he had, at least, 26,000 dollars, which ought to be paid, one half thereof to the plaintiff, (the intestate,) and promising to account to him therefor, and for all future receipts, on the adjustment of the accounts of *M. & M.*, and the plaintiff agreed to have the accounts of the part-

1822.

MUMFORD
v.
MURRAY.

nership adjusted, and all differences settled by arbitrators, who were named. That the 26,000 dollars above mentioned, was (exclusive of the sum received by the defendant in bills of exchange, and accounted for in 1801) received in 1803 and 1804. That the partnership of *M. & M.* was dissolved in 1806, and the property divided between the partners as nearly equal as possible, neither of them being much, if at all, indebted to the other. That the defendant never took any steps to have the accounts adjusted; that in 1814, the intestate made a statement of the account, showing a balance due the defendant of 313 dollars and 56 cents; that the defendant agreed to the correctness of the statement, except on two items of rent. That on the 4th of *August,* 1814, in order to prevent a suit by the intestate, the defendant advanced to him out of the trust fund, 10,000 dollars, but insisted on receiving a bond of indemnity, which was executed by the intestate. That in 1815 the accounts of *M. & M.* were finally adjusted according to the statement made by the intestate, except two items of rent of 1,651 dollars and 6 cents, charged by the defendant, and not included in that statement, and which claim the intestate insisted was unjust. That in the adjustment of the account, a mistake occurred, in allowing a charge of the defendant for his personal expenses, paid out of the funds of *M. & M.*, amounting to 1,823 dollars and 57 cents, while the defendant was gone to *Europe,* principally for his own private benefit.

That the defendant, in his accounts before the master, pursuant to an order of reference in the suit of the assignees of *Robert Murray* against him,* admitted, that he had received the clear sum, after deducting commissions and charges, of 81,836 dollars and 97 cents; and which accounts exhibited a general balance in favour of *M. & M.*, against *Robert M. & Co.*, of 96,645 dollars and 91 cents, due *December* 2, 1801, and which was payable under the trust deeds; and these accounts were exhibited by the de-

* *Vide Vol.* 2. *p.* 565.

fendant, to show that all the trust moneys received were covered by the claim of *M. & M.*, thereby admitting, that all the trust moneys were payable to them ; and that, therefore, the assignees of *R. M. & Co.* had no claim. That the defendant, in his accounts, charged a commission of five per cent. on the whole gross receipts ; and that the defendant ought to account for one half of all the sums charged as commissions. The original bill prayed for an account, and a decree for payment, and for general relief.

The defendant, on the 1st of *April*, 1819, filed his answer to the original bill, which was excepted to as insufficient ; and the exceptions having been allowed, the defendant, on the 5th of *February*, 1820, put in a further answer, which was, also, excepted to as insufficient, in several matters ; and the defendant, on the 27th of *April*, 1820, filed a second further answer. In his first, or original answer, the defendant stated, that the amount of 31,690 dollars and 80 cents, was received from the *British* government on account of illegal captures made by *British* subjects, of the property of *R. M. & Co.*, and were received under a *lien* made or created on that fund, by *R. M. & Co.*, in favour of the defendant, prior to the execution of any of the trust deeds ; and he admitted, that *M. & M.* ought to be credited with the balance of the said sum, after deducting certain specified charges ; and he insisted, that the *cestui que trusts* mentioned in the *fifth* clause of the trust deed of *May* 31, 1800, were not entitled to any portion of the said sum of 31,690 dollars and 80 cents.

. The defendant, in his second answer, admitted, that the balance due from *Clark's* estate was paid as stated in the bill. That all the *cestui que trusts* having priority to *M. & M.*, were paid in full, before the discharge of the executors of *C.*, except what might be payable to *R. M. & Co.* for their maintenance, and to *Mary Murray* on account of her annuity. That his expenses in *Europe* were paid out of the funds of *M. & M.*, and that the amount was not

charged to him in the settlement of their accounts in 1815. That his object in stating the account of *M. & M.*, before the master, was to show, that there were no moneys in the defendant's hands, to which the assignees of *R. M.* could be entitled, as the amount was covered and exhausted by the claims of *M. & M.* The defendant, also, stated, that prior to the execution of any of the trust deeds, he obtained from *Robert Murray & Co.*, an *order* on *Charles Murray* in *London*, dated *June* 24, 1797, for *twenty-four thousand* pounds sterling, or as much as should be received from the *British* government, for property captured on board of certain vessels, specified ; *Charles M.*, being, at that time, the attorney of *R. M. & Co.*, for recovering their claims on the *British* government. That *C. M.* was, afterwards, directed to let the moneys be paid into the hands of *Mullet & Co.* That in 1813, the defendant, and *Clark*, employed *George W. Murray* to go to *London*, to assist in recovering the moneys, and large sums were recovered by his assistance, part of which were paid to the defendant, and the residue to *Clark.* That the *order* of *Charles Murray* is the *lien* spoken of in his first answer, which, he thinks, was given to secure his own claims, " in his individual capacity, or as one of the firm of *Murray & Mumford.*" That there being great confidence between *R. M. & Co.*, and the defendant, it was not deemed necessary to specify how the proceeds of the order were to be applied, they having full confidence that he would fully account for them. That when he first answered, he was not fully advised as to the effect which all the facts above stated might have in regard to the question, whether the sums of money amounting to 31,690 dollars and 80 cents, were received under the said *order* on *Charles Murray*, &c. That he had stated all the facts, and could not say, with certainty, under what instrument those moneys were received. In his *third* answer, he said, that he could not answer further as to *M. & M.*'s interest in the *order*, except, that he con-

sidered, from the general nature of the order, that it was for his own benefit, whether individually, or as one of the firm of *M. & M.* No designation was ever made as to the particular debts, &c. provided for. Those debts, however, were all designated in the schedule to his first answer; and he could give no further explanation. No understanding was ever had with *R. M. & Co.* on the subject, in regard to *M. & M.'s* claim or interest. That *Charles M.* was directed to allow all moneys which should be received from the *British* government, &c. to be paid to *Mullet & Co.,* because they were safer depositaries. He thought the instructions to *C. M.* were in writing from the defendant and *Clark,* as trustees under the trust deeds; that he, and *Clark,* gave *Mullett & Co.,* in 1802, or 1803, a power of attorney to receive the moneys, under which they acted. He had no recollection, information, or belief, that the order was ever presented to *Charles M.,* or notice thereof given to him. He said, that he was led, by advice of his counsel, to believe, that the sums for that purpose mentioned in his first answer, were received under the order on *Charles M.* That the moneys were paid to *Mullett & Co.* in instalments, in 1803, 1804, and 1805. That *Mullett & Co.* were instructed by the defendant, and *Clark,* to place the proceeds of the ship *Jefferson's* cargo to the credit of *Clark.* That the moneys paid by *Mullett & Co.,* to *C.,* were paid to him as trustee, under the trust deeds, &c. &c.

Replications were filed to these answers, and some further proceedings were had in the cause, but, before publication was passed, *John P. Mumford* died intestate, and the plaintiffs, as *administrators,* filed their bill of *revivor and supplement,* praying for a *revivor,* &c. and, by way of supplement, stating, that at the time of the delivery to the defendant, in 1797, of the *order* on *Charles M., Robert M. & Co.* were indebted to *M. & M.,* exclusive of the bail account, above one hundred thousand dollars, which

1822.

MUMFORD
v.
MURRAY.

was, afterwards, considerably increased, and the greater part of which debt now remains due, with interest. That the defendant, in accounting before the master, pursuant to an order of this Court, in the cause of the assignees of *Robert M.*, a bankrupt, against the defendant,* stated an account between those two firms, showing a balance of 69,385 dollars and 33 cents, exclusive of the bail account, in favour of *M. & M.* That at the time of the delivery of the *order* on *Charles M.* to the defendant, the individual claims of the defendant on *Robert M. & Co.* were very inconsiderable, except on account of bail, which demand was, afterwards, assumed by *M. & M.* That in *July*, 1801, the defendant did not pretend, that his private claims against *Robert M. & Co.* amounted to more than 7,360 dollars, and that all his claims were secured prior to the delivery of the *order* on *Charles M.*, by assignment, the proceeds of which amount to not less than 50,000 dollars. That the defendant violated his duty as trustee; and fraudulently diverted the moneys received, by placing them in the hands of *Clark*, whereby the objects of the assignments were defeated ; and the defendant now claims to charge the proceeds received on the *order*, as well as the funds realized under the trust deeds, with the payment of the same debts provided for by prior assignments ; but which ought not now to be charged upon any funds, to the prejudice of the rights and claims of the plaintiffs. That the defendant has received more than sufficient to satisfy all the objects of that order ; and has admitted, that he received, from 1801 to 1808, more than 90,000 dollars. That the defendant ought to have applied the moneys to satisfy the debt due *M. & M.* from *Robert M. & Co.* ; but he has fraudulently kept the knowledge of the receipt of those moneys from the plaintiffs, and their intestate, and has misapplied the moneys, and has represented that they were subject to the operation of the trust deeds, executed by him and *Clark*, subsequent to that order, &c. &c. The de-

fendant, in his *answer* to the *supplemental* bill, said, that the 56,248 dollars, received by *Clark*, under separate assignments, were not part of the proceeds of the *order* on *C. M.* as he believed. That he could not say whether the assignments were prior or subsequent to the order, but he denied that the order was included in any of them. He admitted, that the amount received by him and *Clark* from *Bird, Savage & Bird*, under the trust deeds, was 187,689 dollars and 8 cents, clear of all expenses. That no payments had been made on *M. & M.'s* claim since *August* 1st, 1801, except the 10,000 dollars mentioned in the bill, &c.

A replication was filed to this answer, and proofs taken in the cause.

*November 20th*, 1821. The cause came on to be heard on the pleadings and proofs.

*S. Jones*, and *H. W. Warner*, for the plaintiffs. They stated the following points :

1. That the defendant ought to account to the plaintiffs for all moneys received by him under the trust deeds, and which had not been appropriated according to the directions of the deed of *May* 31st, 1800.

2. That the defendant ought to account, as trustee, for all moneys which he had, or might, with reasonable diligence, have received under the *order* on *Charles Murray*.

3. That in taking the account, the defendant ought not to be allowed, as against the funds received under the order or the trust deeds, for any debts or claims which had been provided for by other and previous assignments.

4. That the charge made by the defendant, of 5000 dollars, and interest thereon, for his services rendered *Robert M. & Co.* in *Europe*, ought not to be allowed, or should be suspended, until the plaintiffs were fully paid.

5. That the defendant ought not to be allowed *commissions* on moneys received by him, and applicable to his own individual claims, or those of *M. & M.*

6. That the sum of £1,412 5s. 7d. sterling, retained by the defendant as salvage, payable to the underwriters, as mentioned in the pleadings, ought to be accounted for.

7. That the defendant ought to be charged with the amount paid out of the funds of *M. & M.*, for his own personal expenses in *Europe*, in 1797 and 1798.

8. That the defendant was chargeable with *interest* for all receipts and balances not regularly and promptly appropriated by him.

*J. O. Hoffman*, and *R. Sedgwick*, for the defendant. They made the following points :

1. That *James V. Murray*, and his copartners, ought to have been made parties.

2. That the *cestui que trusts*, named in the *fifth* clause of the deed of the 31st of *May*, 1800, ought to have been made parties.

3. That the plaintiffs, under their bill, can claim only such moneys as were received under the trust deeds, or under some assignment mentioned in the pleadings, and which could have been lawfully received under such deeds or assignments.

4. That the defendant is not responsible, and is not liable to account for any moneys which went into the hands of *Clark*, prior to the agreement between the defendant and others, and the executors of *Clark*.

5. That the *order on Charles M.* did not constitute a legal assignment of the property mentioned in it; and, if it did, it was never accepted, nor was any thing ever received under it.

THE CHANCELLOR. The defendant is called upon to account to the plaintiffs, as the representatives of his deceased partner, for moneys received by him in trust for the partnership.

If a preliminary objection, as to the want of parties, can

be properly overruled, then the question upon the merits is, not whether there shall be a decree to account, but as to the directions to be given to the master.

The defendant objected, in the first answer, and, also, at the hearing, to a want of parties; and he contends, that the *cestui que trusts,* mentioned in the deed of the 31st of *May,* 1800, ought to have been made parties to the bill.

The *cestui que trusts* referred to, and provided for, in that deed, were required to become parties to it within twelve months, to entitle themselves to the benefit of its provisions. The deed bears date the 31st of *May,* 1800, and the caption, preceding the signatures of the creditors, bears date the 29th of *April,* 1801; and the creditors, if they subscribed within the year, must have subscribed between the 29th of *April,* and the 31st of *May,* following. There is no evidence in the case, at what time or when they subscribed, and, perhaps, it would not be too rigorous to require proof, in positive affirmance of the fact of the subscriptions *within the year,* by a defendant, who, at this late day, raises the objection of a want of parties. But, admitting the presumption of a seasonable subscription, the strongest answer to the objection is, that the creditors, referred to in the fifth clause of the trust deed, and who subscribed to the conditions of the deed, have lain by since *May,* 1800, and have suffered *twenty* years to elapse, without asserting their claims against the trustees under that deed. In that interval of time, there has been almost a continued controversy between the assignees of *Robert Murray & Co.* and the defendant, touching those funds. The presumption, now, is, that the claims of those creditors have been satisfied or abandoned. This seems to be a necessary inference from the lapse of time and the continued silence of the creditors, during all the litigations concerning the right and title to those funds. It would have been almost impossible for them to have slept quietly during the din of the controversy, if they had subsisting

*It is too late, after a lapse of twenty years, to object, at the hearing, that other cestui que trusts were not made parties.*

and valid claims. We cannot, in sound discretion, suspend this cause, merely to compel the plaintiffs to bring in parties, resting on such stale demands, and with such presumption against them. And the defendant ought, particularly, to be excluded from the benefit of this indulgence, since he has admitted, that all the trusts, having priority to that in favour of *M. & M.*, except the annuity to *Mary Murray*, was satisfied; and since he has repeatedly engaged to account with the intestate, and as repeatedly represented that all the trust funds, for which he was accountable, belonged to the house of *Murray & Mumford*.

I shall, accordingly, overrule the objection; and, if the plaintiffs can establish one point, which was principally discussed at the hearing, and which is, that the funds, specified in the order of the 24th of *June*, 1797, were received, and are to be accounted for *under that order*, then this question, concerning parties, becomes quite unimportant, because, most of the funds sought for, in this case, were covered by that order.

The original bill considered the moneys, for which the defendant was to account, as having been received by him as trustee under the trust deed of 1800; but the supplemental bill charges the defendant to have received under the order above referred to, more than sufficient to satisfy all the objects of it, and to have received upwards of 90,000 dollars under it, and that he has misapplied those funds, and kept the intestate in ignorance of the receipt and application of the funds under that order.

One great question in the case is, whether the defendant shall not be held to account for the funds specified in that order, on the foot of the order. The order was drawn by *Robert Murray & Company*, upon *Charles Murray*, in favour of the defendant; and the moneys received for the property specified in it, must have been received under it, and could not have been received under either of the trust deeds, because, the order was a specific appropriation of the property, and that property was not,

in fact, covered by the trust deeds. If I am not greatly mistaken, there is nothing in the original trust deed of 1798, or in the deed of the 31st of *May*, 1800, founded on the prior deed, that touches the property mentioned in the order. If the fact be so, it is decisive on this point, and the account must be taken on the foot of the order of 1797, and not under the subsequent trust deeds.

The defendant has, again and again, admitted, that the funds for which he is called upon to account for, or the principal part of them, were received under the order of 1797, and belonged to the house of *Murray & Mumford.* Thus, in an affidavit made by the defendant, and read before this Court on the 8th day of *December,* 1817, (and which appears in the exhibit in this cause, containing the defendant's case on appeal, in the cause of *Riggs and others against Murray,*) he admitted, that in *June,* 1797, *Robert Murray & Company* had property to a great amount seized and detained by the *British* government, and that on the 24th of *June,* 1797, they drew the order in question on *Charles Murray,* their agent in *London,* for claiming the property, in favour of the defendant, for 24,000 pounds sterling, or as much as he might receive for their account, by virtue of their claims on the *British* government, for property taken on board the barque *Two Brothers,* the snow *Harmony,* the brig *Rachel,* the schooner *Ariel,* and the ship *Favourite.* He stated further, in that affidavit, that all the debts due to him, and his copartner, (the intestate,) under the firm of *Murray & Mumford,* were upon engagements and responsibilities entered into for *Robert Murray & Company,* and that it was agreed, that whatever sum the defendant might receive from the said claims on the *British* government, should be retained and credited, on account of the said debts and responsibilities. He stated, further, in that affidavit, that the *British* government did pay large sums of money, whereof the 31,699 dollars and 80 cents, mentioned in the master's re-

1822.

MUMFORD
v.
MURRAY.

port, (referred to in the pleadings and proofs in this cause,) were a part. It appears, further, in addition to this affidavit, that in the case made and signed by the defendant's counsel, and read in the Court of Errors, in the cause of *Riggs* v. *Murray*, already referred to, it was stated, and averred as a fact, and which averment we must intend was made upon the information and instruction of the defendant, that the sums received from the *British* government, amounting to 31,699 dollars and 80 cents, were received *under a lien* in favour of the defendant, given in 1797, nearly a year before the first deed to *Clark* and *Murray*. So, again, in his first answer in this cause, the defendant admits, that the sum last mentioned, was received from the *British* government on account of illegal captures of the property of *Robert Murray & Company*, under a *lien* made or created on that fund, by the order aforesaid, and that the *cestui que trusts* under the *fifth* clause of the trust deed of 1800 were not entitled to any portion of that sum.

In his subsequent answers, the defendant seemed inclined to escape from the effect of this admission, for he says, in his second answer, that he cannot say under what instrument the 31,699 dollars and 80 cents were received. He contends, that the order was given to secure his individual claims, or those belonging to him as one of the house of *M. & M.*, and he admits, in another place, that his individual claims at that time were inconsiderable. He says, further, that he, and his co-trustee, under the deed of 1800, gave *Mullett & Co.*, of *London*, authority to receive those funds of *Charles Murray*. He says, in his third answer, that as there was no particular appropriation of the funds contained in the order, he considered the order was intended for his own benefit, whether individually, or as one of the house of *M. & M.*

These admissions of the defendant ought certainly to conclude him, and they are, also, in entire consistency with

the legal operation of the instruments under which he acted. He says, he does not recollect whether he presented the order to *Charles Murray*; yet, he admits, that the funds specified in it were received, and held by him, in pursuance of that lien and authority. If he did not present the order duly, nor use due diligence to recover and secure the funds appropriated to him under it, he is still responsible to the representatives of his copartner, for the moneys which he might have received and secured under that order, with reasonable care and diligence. If he suffered those funds to pass improperly into the hands of *J. I. Clark,* he is chargeable for any loss which such an act of negligence, or abuse of his trust under the order, may have occasioned. (*Shipbrook* v. *Hinchenbrock,* 16 *Vesey,* 477. *Underwood* v. *Stevens,* 1 *Merivale,* 712.)

It is true, that the intestate always seems to have considered the defendant as responsible to him by virtue of the trust deeds, but that arose from the ignorance in which he was kept by the defendant, of the facts connected with his duty as trustee. The correspondence between the parties, as detailed in the pleadings and proofs, sufficiently excuses the intestate from acting under the want of a precise and accurate knowledge of his rights. There is no surmounting the conclusion that follows from the fact, that the trust deeds did not reach and cover the funds specified in the order. The defendant had no authority to interfere with those funds, but under the order, and it related only to the one fourth of the property captured, as the other three fourths had been acquitted, and passed into the hands of *Bird, Savage & Bird.* This one fourth was not touched by the deed of 1798, and that was the only deed that conveyed any property. It assigned the three fourths, but did not assign the one fourth in the possession of the *British* government. The deed speaks for itself on this point; and that one fourth was, by the order, assigned for the benefit of *Murray & Mumford;* and the defendant, by the

1822.

MUMFORD
v.
MURRAY.

A trustee, who improperly suffers funds to pass into the hands of his co-trustee, is responsible in case of loss.

acceptance of the order, became a trustee to his copartner for a moiety of the funds which were, or might have been received under that order, at least, so far as the just claims of *M. & M.,* upon the house of *Robert Murray & Company,* would exhaust those funds. All the moneys which the house of *Mullet & Company* received from those funds, must have been received under that order, and by virtue of the authority of the defendant. That house could not have received those funds under any other authority. And if the defendant has unduly mingled those moneys with other moneys proceeding from other sources, and subject to other trusts, and has suffered these moneys to pass into the hands of *J. I. Clark,* or any other person, without the authority of his late partner, he must, notwithstanding, account with the plaintiffs for a moiety of all those moneys.

Nor did *Mumford,* the intestate, conclude himself, by his being a party to the discharge of the executors of *Clark,* on the 22d of *February,* 1810, because, that discharge related only to moneys received under the trust deeds, nor was it intended to operate to release *the defendant from any of his* pre-existing responsibilities. Those responsibilities were expressly retained. It was the folly or fault of the defendant to mingle together in his accounts the moneys received by *Mullett & Co.,* under the order, and the moneys received under the trust deeds, and to settle with *Clark* as though all those moneys were received under the trust deeds. *Mumford,* by a prolonged series of concealments, or studied reserve on the part of the defendant, was kept in profound ignorance of the fact, that the funds were so blended. He knew nothing of the order until the appeal in 1818. The defendant never produced the order before the master when he accounted, in the suit of *Riggs and others* v. *Murray ;* but the accounts were taken generally, under the erroneous assumption produced by the acts and conduct of the defendant himself, that the moneys and ac-

counts were all referable to the trust deeds. The truth of the case, and the legal evidence of title to the funds received from the *British* government, and the explicit and repeated admissions of the defendant, since the accounting before the master in the former cause, render it now a duty of the Court, and an act of justice to the plaintiff, to have the accounts between the parties to this suit taken upon the proper basis.

3. Another question raised, and discussed at the hearing, related to the charges of the defendant of his expenses in going to *Europe*, and his charge of commissions.

The defendant received a compensation of 5000 dollars, and that threw the expenses upon himself; and, besides, the object of the voyage was personal. It was principally to induce a person, for whom he was bail, to come over to this state and surrender himself. While he was absent in *Europe*, his partner here was attending to the business of the concern. There is no justice in the charge of his personal expenses abroad, to the house of *Murray & Mumford.* As to commissions on moneys received for, and on behalf of his partner, they are inadmissible, according to the settled doctrine of the Court, when charged by a trustee.

The defendant is, likewise, to be charged with interest on the moneys, from time to time received; and for this plain reason, that he mingled the moneys belonging to his partner with his own, and used those moneys as his own. It forms, therefore, a very just and clear case for interest.

I shall, accordingly, direct a reference upon the following principles : (1) That the defendant account for the funds, or the proceeds of the property specified in the order of the 24th of *June*, 1797, and which the defendant has received, or might have received, with reasonable diligence, and that he account for it, *as under that order ;* inasmuch as the order was delivered, to provide not only for the individual claims of the defendant on *Ro-*

Vol. VI. 3

---

*1822.*

MUMFORD
v.
MURRAY.

A partner, who goes abroad on his own personal affairs, is not entitled to charge his expenses to the partnership.

A trustee is not entitled to commissions ; and if he uses the trust money as his own, he must pay interest.

*bert Murray & Co.*, but also for the claims of *Murray & Mumford*; and the defendant became a trustee under that order, to the extent of his partner's (*Mumford*) interest therein; and that no allowance be made to the defendant for funds, which, by his consent, went into the possession, or under the control of *John Innes Clark*, and was misapplied or lost to the purposes of the trust; and that in taking the account under the order, the defendant be not allowed to charge against the funds arising under that order, for any individual debt or claim of his against *Robert Murray*, or *Robert Murray & Co.*, which had been provided for by any previous assignment from *Robert Murray & Co.*, whether of the cargo of the *Jefferson*, or otherwise, until the defendant shall have first accounted for all moneys received, or which, with reasonable care and diligence, might have been received by him, under any such prior assignment.

(2) That all claims by the defendant for commissions on moneys received for, or on account of his own claims, or those of the house of *Murray & Mumford*, be disallowed.

(3) That the defendant be charged with interest on all moneys received by him, and for which he is accountable to the complainants.

(4) That an account be also taken and stated, of the moneys and effects received by the defendant under the trust deeds in the pleadings and proofs mentioned, and not duly applied according to the provisions and directions of the trust deed of 31st of *May*, 1800; and that such account be taken upon the principles already declared; and with this further direction, that the defendant be charged with the amount paid out of the funds of *Murray & Mumford*, for his personal expenses in *Europe*, in the years 1797 and 1798; and that his charge of 5000 dollars, mentioned in the pleadings, and claimed by defendant, as a compensation or salary, and deducted by him out of the funds arising under the trust deeds, be allowed to him; and further,

that the charge of the defendant of 1412 pounds, 5 shillings and 7 pence sterling, mentioned in the pleadings as deducted and retained by the defendant, out of the trust funds under the said deeds, on account of salvage said to be due to insurers, be disallowed ; inasmuch, as no such salvage has been paid, and is not now presumed to exist as a valid demand.

(5) That the master have the usual power to examine the parties on oath, and to make to them all just allowances not inconsistent with the particular directions in this decree, and to call for books, entries, vouchers, and papers, in the custody or power of the parties, and requisite to a just and full account, and to require the production of them upon oath ; and to report with all convenient speed, &c.

Decree accordingly.