ST. PAUL TRUST COMPANY, Executor, v. NORMAN KITTSON and Others.[1]

NORMAN KITTSON and Others v. ST. PAUL TRUST COMPANY, Executor.

Nov. 15, 1895.

Nos. 9337–9338—(19–20).

### Executor—Interest on Funds Used—Separate Accounts.

The executor in this case used a part of the trust fund coming to its possession as executor in its own private business of a loan and trust company, but kept no separate accounts of the investments made from the trust fund, or of the interest or profits received or made by reason of such use. *Held*, that it was properly charged, upon a settlement of its accounts as executor, with interest on so much of the trust fund so used by it at the rate of 7 per cent. per annum.

### Same—Commingling Trust Funds—Cash Balance.

Where a trust company has charge of several trust funds belonging to separate estates or parties, and has used in its own business a part of such funds, and its cash balance kept on hand is made up of money belonging to all of the trust funds commingled, for the purpose of ascertaining how much money belonging to any particular estate it has so used only the proportionate part of its cash on hand which belongs to such estate can be deducted from the cash balance due to such estate.

[1] Reported in 65 N. W. 74.

#### Investment by Executor—Certificates of Deposit.

Evidence considered, and *held*, that the trial court was justified in approving an investment by the executor in certain bank certificates of deposit, originally payable to it as an individual, and afterwards renewed and indorsed to it as executor, as an investment for the estate, and in disapproving as such an investment certain certificates of deposit issued by the executor as a trust company to itself as executor.

#### Compensation of Executor.

It is only when an executor has been guilty of willful default, misconduct, or gross negligence in the management of the trust estate, whereby it has suffered loss, that compensation to which he would otherwise be entitled can be denied to him. *Held*, that the executor in this case was not guilty of such default, misconduct, or neglect, and it was properly allowed compensation for its services.

Separate appeals by St. Paul Trust Company, as executor of the estate of Norman W. Kittson, deceased, and by Norman Kittson and others, from orders of the district court for Ramsey county, Kelly, J., respectively denying the motion of said executor to vacate and set aside certain parts of the findings of fact and conclusions of law and for a new trial, and denying the motion of Norman Kittson and others to vacate and set aside the findings and decision and for a new trial. Modified.

*Harvey Officer* and *George B. Young,* for executor.

The court erred in charging the executor with interest at the rate of 7 per cent., or at any greater rate than the 4 per cent. per annum credited by the executor on the moneys represented by the Trust Company's certificates of deposit or otherwise invested by it. If effect is to be given to the certificates as an investment at the rate of interest specified in them, that rate must control. Such effect should be given. If the executor had invested in like certificates issued by a bank, such investment would have been unobjectionable, and the rate of interest fixed by the certificates would have been all they could ask. A fortiori, if the investment had been in the certificates of some other trust company organized under the act of 1883. Deposits with such companies are deemed to be at less risk than deposits with banks, and such deposits are expressly authorized by Laws 1883, c. 107, § 9, subd. 3, as amended by Laws 1885, c. 3, § 6 (G. S. 1894, § 2849, subd. 3). The statute authorizing such deposits makes no ex-

ception of the case where the trust company making the deposit as executor is the same company which receives the deposit and issues the certificate. See Young v. Young, 16 Minn. 72 (90). The rate fixed in the certificates was the highest market rate on demand loans.

But if the Trust Company was in error in its construction, and the case is to be decided without regard to the statute as to trust companies, still the court erred in charging the executor with more than 4 per cent. per annum on the money used by it. Where a court of probate or equity charges an executor or trustee with interest, it is charged not as interest "upon the loan or forbearance of money," not because the statutes give a specified rate on such loan or forbearance, not by way of damages or as a penalty, but as a measure of the profits which the executor is proved or presumed to have made, or which the court holds (when money is left uninvested) he ought to have made and so (treating that as done which should have been done) holds that he did make, or that he is estopped from saying he did not make. Attorney General v. Alford, 4 De G., M. & G. 843; Vyse v. Foster, L. R. 8 Ch. 309, affirmed L. R. 7 H. L. 318. The liability of an executor in this respect is precisely defined by statute. G. S. 1894, §§ 4632, 4633. Neither under the statute nor under the general rules of law is this executor chargeable with more than the profits actually realized. There is here no presumption that the profits realized equalled 7 per cent. or any rate greater than the rate charged against itself by the executor. Such presumption, like any other presumption of fact, must rest on a foundation. It obtains in two classes of cases: (1) where the executor refuses to account; (2) where the executor has used the money in trade or speculation, exposing it to the risks of such use, with the likelihood of corresponding profits. It is believed that in no other class of cases is it presumed against an executor or trustee that his profits exceeded or equalled statutory interest. To these classes mentioned belong the following cases: Burdick v. Garrick, L. R. 5 Ch. 233, 241; Vyse v. Foster, supra; Piety v. Stace, 4 Vesey Jr. 619a; Pocock v. Reddington, 5 Vesey Jr. 794; Rocke v. Hart, 11 Vesey Jr. 58; Bate v. Scales, 12 Vesey Jr. 402. And this was the ground of decision in the following cases, which are in terms limited to the case of an executor or trustee "being a trader." Sutton v. Sharp, 1 Russell, 146; Rocke v. Hart, supra; Treves v. Townsend, 1 Cox, Ch. 50; And see Lewin, Trusts, 340, §§ 11–15. In

cases where the executor or trustee is not presumed to have realized, or is not estopped to say that he did not realize, profits in excess of statutory interest, the cestui, having once elected to take actual profits, cannot claim statutory interest.

*Daniel Murphy*, for objecting appellants and respondents.

The executor was guilty of a breach of trust in converting the funds, and appropriating them to its own use and benefit, and not for the benefit of the estate. 27 Am. & Eng. Enc. Law, 186, 189; Cook v. Lowry, 95 N. Y. 103. Good faith is no excuse for an executor who uses the funds of the cestui as his own and makes profits out of them. A trustee must act in the utmost good faith. Any concealment of the method in which he has handled the trust funds will be visited with heavy penalty. McNeill v. Hodges, 83 N. Y. 504; Smithers v. Hooper, 23 Md. 273; Hall v. Grovier, 25 Mich. 428. If it is shown that he has not accounted for profits made, he is chargeable with interest, usually the highest rate. Ringgold v. Stone, 20 Ark. 526. See State v. Layton, 3 Harr. (Del.) 469. If it is shown that the trustee has used the trust funds in his own business, or that he has failed to render the proper account, it will be presumed that he has made large profits out of their use or supposed use; and to escape the assessment of a high rate of interest, the burden is upon him to show what benefit he has derived from the use. See Attorney General v. Alford, 4 De G., M. & G. 843; Barney v. Saunders, 16 How. 534; Burdick v. Garrick, 5 Ch. App. 233; Heathcoate v. Hulme, 1 J. & W. 122; Laird v. Chisholm, 30 Scot. Jur. 582; Robinson v. Robinson, 1 De G., M. & G. 247. The mere fact that an executor has commingled the trust funds with his own, whereby the identity of the trust funds is lost, is a breach of official duty. Schouler, Ex. & Adm. §§ 239, 243. See Williams v. Williams, 55 Wis. 300, 12 N. W. 465, and 13 N. W. 274; Commonwealth v. McAlister, 28 Pa. St. 480; S. C. 30 Pa. St. 536; Baskin v. Baskin, 4 Lansing, 90; 27 Am. & Eng. Enc. Law, 161, 162; Snorgrass v. Moore, 30 Mo. App. 232; Schouler, Ex. & Adm. § 383.

START, C. J. This matter comes before this court on cross appeals by the parties, the St. Paul Trust Company, the executor of the will of Norman W. Kittson, deceased, on the one side, and certain

devisees and legatees under his will on the other, from orders of the district court of the county of Ramsey denying their respective motions for a new trial.

The subject-matter of the litigation is what the parties designated as the "third account" of the executor, covering a period of 20 months; that is, from July 1, 1891, to March 1, 1893, which was originally presented to the probate court of Ramsey county, and brought into the district court by appeal. The record discloses the fact that the settlement of the estate was delayed by the pendency of a suit in the United States circuit court for Minnesota, which had been revived against the executor, and that prior to and during the period covered by the account a large fund belonging to the estate accumulated in the hands of the executor. This fund it invested in three classes of certificates of deposit, and disposed of the balance as follows:

First. It deposited a portion thereof in various banks of the city of St. Paul, receiving therefor certificates of deposit, payable to itself as executor, and received interest on the sum so deposited at the rate of 4 per cent. per annum. It charged to itself and accounted to the estate for all interest received from this source. This investment is not in controversy, it being conceded by the legatees to have been a proper one.

Second. It invested in the certificates of deposit of such banks, bearing interest at 4 per cent. per annum, the further aggregate sum of $120,000, which certificates were payable to itself individually. These certificates were renewed, and the renewals were by proper indorsements transferred to the trust company, as executor, as investments for the trust estate. In the accounting it charged itself with interest at the rate of 4 per cent. per annum on the amount of these certificates.

Third. Being unable to place any more of the trust fund with the banks, it used a large sum of the remainder thereof in its own private business, and loaned or otherwise disposed of it for its private account and benefit. And on March 31, 1892, it issued to itself, as executor, certificates of deposit bearing interest at 4 per cent. per annum for a portion of the money so used by it, amounting in the aggregate to the sum of $160,000. These certificates were antedated as of the dates when the money was used. It charged itself with interest on the amount of such certificates at the rate of 4 per cent. per annum only,

but the trial court held that the amount represented by these certificates must be treated as a part of the money belonging to the estate, which was used by the executor in its private business.

Fourth. The balance of the fund in the executor's hands, except so much thereof as was kept on hand or deposited in the banks, subject to its check, was used in its private business. It received interest on the amount so deposited at the rate of 2 per cent. per annum, or in the aggregate the sum of $2,138.10, which sum it credited to the estate in its amended account, and the same was accordingly charged to it by the trial court.

The court also charged the executor with interest on so much of the trust fund as it found was actually used by the trust company in its own business, including the certificates of the third class, but excluding those of the second class, the aggregate sum of $14,337.32, or $9,603.99 in excess of the amount credited to the estate by the executor on account of such interest. The basis upon which the court made the charge was that the executor realized a profit on the money used by it equal to interest at the rate of 7 per cent. per annum, and that the amount of the certificates of the third class was used in its business. Interest was computed on the daily balances at that rate on so much of the fund as the court found had been so used.

The executor, by its third and fourth assignments of error, claims that the court erred in finding that the profits equaled the interest it charged to the executor, and also in charging it with a greater rate of interest on the money used than 4 per cent. It also claims that it was error to include the amount of the certificates of class 3 in ascertaining the total daily balances of the money so used. The legatees claim that the certificates of class 2 should also have been treated as money used by the executor for its private gain, and the amount added to the sums found by the court to have been so used by the executor; that interest at the rate of 7 per cent. should have been charged to the executor upon the entire cash balance due to the estate from the executor; and that the court erred in allowing the executor anything for its services.

1. Although the investment made by the executor in the certificates of class 2 was technically irregular, for the reason that prior to their formal indorsement to the trust company as executor they were on their face its property, still they were, in all substantial respects,

after such indorsement, an investment for the estate, of the same kind, with the same security and rate of interest, as the certificates of class 1, which are conceded to be a proper investment. There is no foundation for any claim that the executor ever received anything from the investment except the interest at 4 per cent., for which it has fully accounted. The trial court found that in making this investment the executor acted in good faith, and it approved the same, and affirmed in this respect the order of the probate court. The court was authorized to approve the investment in its discretion, and, in our opinion, the discretion was properly exercised.

2. The certificates of class 3, which the executor issued to itself, were, in legal effect, simply a loan from the executor to itself, of which the certificates were the evidence. The issuing of the certificates did not change the fact that the amount represented by them was being used by the executor in its private business. Neither does the fact that the statute permits other executors to deposit trust funds with this trust company change the essential character of the transaction. As well might a solvent private banker, who was also an executor, take the trust fund, use it in his business, and issue, as such banker, to himself, as executor, certificates, and then insist that he had not used the fund in his business, and was not accountable for profits in excess of the rate of interest named in the certificates, because, if any other executor had in like manner deposited trust funds with him, and taken certificates therefor, the courts would have approved of the investment. The trial court was right in disregarding these certificates as an investment for the estate, and treating the amount thereof as a part of the money of the estate actually used by the executor for its own gain.

3. The question as to the amount which the executor should be charged as interest or profits on account of the trust fund used by it in its own business is the important and difficult one in this case.

Whatever may be the rule in England, the general rule, which seems to be established in the United States by the great weight of authority, is that, if an executor or trustee mingles the trust fund with his own money, or uses it in his private business, he will be charged with simple interest at the rate established by law as the legal rate, in the absence of special agreements. The rule is subject to the qualification that if he receives or makes more than legal interest

he shall pay more. Judd v. Dike, 30 Minn. 380, 15 N. W. 672; 1 Perry, Trusts, § 468; Schouler, Ex'rs, § 538; 2 Woerner, Adm'n, § 511; Walls v. Walker, 37 Cal. 424, 99 Am. Dec. 296, and note; 3 Williams, Ex'rs (7th Am. Ed.) 363, 365, 404, 407. This rule, while it may work a hardship in special cases, is based upon justice, and a sound public policy. In justice, because, as held by Chancellor Kent in Mumford v. Murray, 6 Johns. Ch. 1: The trustee who mingles the trust money with his own, and uses it in his own business, must pay interest, for the reason that he uses it as his own. "It forms, therefore, a very just and clear case for interest." In a sound policy, because it prevents abuses by taking away all temptation to executors or trustees to use the trust fund in their private business. To relax the rule, as some courts have done, because the trustee acted in good faith, or did not hazard the fund in trade or speculation, would render the rule uncertain, and invite the evils it is intended to prevent. Logically it is difficult to see how the character of the executor's business, or any refinements as to the basis or theory upon which trustees were originally charged interest as a measure of profits, can change the essential character of the act of a trustee who uses the trust fund in his own business without the approval of the court or the cestui que trust. He, in legal effect, borrows the money. There is and can be no special agreement as to the rate of interest or the time of payment. The loan is past due from the moment he makes it. Why, then, should he, by a violation of his duty, secure to himself an advantage not accorded to other debtors?

It is not necessary, however, that we should adopt this rule in this case in order to sustain the ruling of the trial court to the effect that the executor in this case must be charged with interest at the legal rate; for the cases which hold that interest is never charged as such, but as a measure of profits, also hold that, if the trustee fails to keep proper accounts, from which may be readily ascertained with reasonable certainty the amount of the profits, he will be charged interest at the legal rate. Thus, in the case of Kellett v. Rathbun, 4 Paige, Ch. 102, it was held that, where an executor mixed the trust funds with his own money, and loaned them out at interest, without keeping separate accounts thereof, he must pay interest on the money used to the estate. Now, in this case the executor used the trust fund generally in its business as a loan company, but kept no separate ac-

counts of the investments made from the trust fund, or of the interest or profits received or made by reason of such use; and the only way to ascertain even approximately the amount of such profits is to investigate its entire business, and ascertain the average net rate per cent. profit made by it during the time it was using the trust fund. This average net rate per cent. profit, when ascertained, would not be the actual rate per cent. of profit realized from the trust fund, for the executor cannot thus harness the fund to the fortunes of its private business and make it share in its losses and expenses, for the executor is paid from the fund for taking care of it. The executor, therefore, was, in any view of the case, properly chargeable with interest on the fund used, at the legal rate, because it did not keep a separate account of the investments from the trust funds and of the interest or profits realized therefrom, so that it could be readily and accurately ascertained just what profits were made. This view of the case renders any question as to profits immaterial.

4. This brings us to the question as to the proper amount the executor should pay interest upon. The trial court excluded from its computation so much of the trust fund as the executor kept on hand and deposited in bank generally with its own money and that belonging to other estates. This technically was a use of this portion of the fund in its business, for it incidentally served the purpose of a necessary credit or reserve fund in bank; but the portion of the fund kept on hand was available at all times to pay the current expenses and demands upon the estate, and was used for this purpose. We are therefore of the opinion that the trial court was justified in charging the executor with only the actual interest received on the part of the fund so kept and used.

The trial court, to ascertain the amount used by the executor in its own business, for the purpose of computing interest thereon at the legal rate, deducted its entire average daily cash balances from the average daily balances due from it to the estate. This was error. The record conclusively shows that the trust company was at this time managing other trust estates, to which large cash balances were due, and that 44 (rejecting the fractions) per cent. of its cash balances on hand equitably belonged to such other estates; therefore only 56 per cent. of such cash balances should be deducted from the balances due to the Kittson estate, for the purpose of ascertaining the actual

amount of money belonging to the latter estate used by the executor. Where a trust company has charge of several trust funds belonging to separate estates or parties, and has used a part of such funds in its own business, and its cash balance on hand is made up of money belonging to all of the funds commingled, for the purpose of ascertaining how much money belonging to any particular estate it has so used, only the proportionate part of its cash on hand which belongs to such estate can be deducted from the cash balance due to the estate. It requires no argument to demonstrate this proposition, for any other rule would permit a trust company, having charge of 10 estates and having in its hands $50,000 belonging to each, to keep only this amount on hand, and loan $450,000, and, when called to account for interest or profits realized in any particular estate, to successfully defend on the ground that it kept on hand and unused the entire amount due to such estate. Fifty-six per cent. only of the average daily cash balances of the trust company must be deducted from the daily balances due to the Kittson estate, and upon the balances so found interest at the legal rate must be charged to the executor. The executor charged itself with the entire interest received from the banks on its entire daily balances with them. It is therefore entitled on a restatement of its account to have this item, $2,138.10, reduced 44 per cent.

5. It is only when an executor has been guilty of willful default, misconduct, or gross negligence in the management of the trust estate, whereby it has suffered loss, that compensation to which he would otherwise be entitled must be denied to him. The executor in this case has not been guilty of such default, misconduct, or negligence, and it was properly allowed compensation for its services.

The case is remanded, with the direction to the district court to modify its conclusions of law and settle the executor's account in accordance with this opinion. So ordered.

MITCHELL, J. (concurring). While I concur in the result arrived at on all points involved in these appeals, I do not wish to commit myself to the proposition laid down in the opinion that where a trustee uses trust funds by loaning them at interest in his own name he must necessarily be charged with the rate of interest fixed by law "for the loan or forbearance of money," where no different rate

is contracted for by the parties, although it be made to appear that he in fact loaned it at a less rate. To treat it as a loan to himself, to which the statute referred to would apply. might logically lead to some embarrassing results. Suppose, for example, as was the case in this state in former years, the usual and current rate of interest on loans of money was 12 per cent., while the statutory rate in such cases, in the absence of an agreement for a different rate, was only 7 per cent.; and suppose, further, that it appeared that a trustee had loaned trust funds in his own name, but it did not appear at what rate of interest,—I think the presumption would be that he received the usual and current rate, and that he would be chargeable with 12 per cent. and not merely 7. But as suggested in the opinion the point is not necessarily involved in this case. Every presumption is against a trustee who uses trust funds in his own business, or invests them in his own name. Hence, if he loans them in his own name, the presumption is that he received the current rate of interest. In this case it did not appear, and for reasons stated in the opinion the trustee was unable to show, at what rate of interest it had loaned this trust fund, except that it had loaned moneys indiscriminately out of this and other funds at rates varying from 4 to 8 per cent.,—a majority at 6 per cent. On this state of the evidence, aided by knowledge of facts of which I think perhaps the court had a right to take judicial notice, it had a right to adopt 7 per cent. as the current rate of interest, and to assume that the trustee had loaned the trust funds at that rate.

In reference to the amount upon which the trustee should be charged 7 per cent. interest I wish to make these suggestions: I do not think that it was entitled, as a matter of law, to have the whole or any aliquot part of its cash balances kept on deposit with its banker treated as a part of the trust fund kept on hand and not invested. It does not follow that a person has received no profit or advantage of money because he lets it lie in the bank, for, if it is necessary for him to keep money at his banker's for the purposes of his credit, and for use in his own business not connected with the trust, and he uses the trust money for that purpose, he does use it in his own business as much as if he had actually expended it. It answers the purposes of his business, and he derives as much advantage from it as if it had been his own money. If this clearly appeared to be.

the state of facts in this case, I could not hold that the trustee was entitled to a deduction of any part of its balance kept in bank. But I think there was evidence from which the trial court was justified in finding as a fact that this balance was kept on hand chiefly for the purpose of meeting current demands upon it on account of the various trust funds in its hands, including the Kittson estate. While caution should be exercised not to relax the strict rules of accountability applicable to trustees, yet I think, under all the facts and circumstances disclosed on the evidence, the court was justified in deducting from the entire trust fund in the hands of the trustee, and not otherwise invested, the proportion of the cash balances suggested in the opinion, and only charging 7 per cent. on the remainder.

Upon a point made in the brief, but not specifically mentioned in the opinion, I will add that I do not think there was in the case any question of election between profits and interest. My view is that, when a court of probate or of equity charges a trustee with interest on the trust fund, it is charged not as interest "upon a loan or forbearance of money," but as the measure of profits which he is proved or presumed to have made or is estopped from saying that he did not make, or which he ought to have made, but did not make. Hence the only question in this case is, with what rate of profits, proved or presumed, ought the trustee to be charged?

CANTY, J. I concur with Chief Justice START on the third subdivision of his opinion, and with Justice MITCHELL in what he says as to the position taken in the fourth subdivision of that opinion. In all other respects I concur in the opinion:

The following supplemental opinion was filed December 3, 1895:

PER CURIAM. On a further examination of the record, upon the application of the trust company for a modification of the decision of the court, we are satisfied that the evidence does not conclusively show that only 56 per cent. of the trust company's average daily cash balances equitably belonged to the Kittson estate, and that a finding on this question by the trial court is necessary. Therefore it is ordered that the previous order of this court remanding the case be amended so as to read as follows: "Cause remanded to the district

court with directions to retry the question of the proportion of the daily average credit balance of the Kittson estate to the aggregate daily average credit balances of all the trust estates, and thereupon make a finding upon that issue, and, having made such finding, to modify its conclusions of law and settle the executor's account in accordance with the rules laid down in the opinion."