**In the Matter of the Trust Created Under the Last WILL and Testament of Lena Bank GERSHCOW.**

**Meyer PAPERMASTER, Appellant,**

v.

**Hannah BLUMENTHAL, Respondent.**

**No. 46970.**

Supreme Court of Minnesota.

Dec. 2, 1977.

Meyer Papermaster, pro se, for appellant.

Melvin Ogurak, Peter H. Watson, and Henry H. Bank, Minneapolis, for respondent.

Heard before SHERAN, C. J., and TODD and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order of the district court denying a petition brought by a remainder beneficiary of a trust to remove the trustee, to compel an annual accounting, and to restore the corpus of the trust in part. We affirm.

In 1961, Lena Bank Gershcow executed a will which established a trust fund for the benefit of certain of her relatives. The pertinent provisions of the will provide:

"SIXTH:

"I devise and bequeath to my beloved sister Bessie Bank Papermaster, Hannah Bank Blumenthal and Chas. M. Bank, the sum of One Hundred Dollars per month, each, and in the event the death of any of the parties their share be divided equally between the surviving parties mentioned herein.

"SEVENTH:

"I hereby create a Trust Fund for the benefit of the parties mentioned in paragraph Sixth of this Will, and that I appoint Hannah Bank Blumenthal as Trustee for said fund, and in the event of her death I hereby appoint the Northwestern National Bank of Minneapolis as Trustee for said fund, and that said Trust Fund shall be created after the decease of all parties mentioned in paragraph Sixth; that the expiration of the creation of this Trust Fund all moneys shall be divided equally to the heirs of Bessie Bank Papermaster and Hannah Bank Blumenthal."

Hannah Bank Blumenthal was also designated as the sole executrix of the will.

Lena Gershcow died on June 20, 1966, and Hannah Bank Blumenthal was appointed trustee of the trust fund on April 4, 1968. In 1971, the trust received $74,451 in assets from the probate court. The assets consisted of several savings accounts in local banks and savings and loan associations, one Series H United States savings bond, and a limited number of shares in three corporations. Until the present petition was brought, the trustee did not reinvest these assets and thus kept them in the same form as received from her sister's estate. After the first hearing on the petition was held, the trustee transferred the savings account assets into 4-year certificates of deposit.

At the time this matter was heard, only Hannah Blumenthal, the trustee, survived and is therefore the life beneficiary of the trust, entitled to receive $300 per month under the terms of the trust. The trustee's two children, Malcolm Blumenthal and Myra Blumenthal Shapiro, and petitioner, Meyer Papermaster, are the remainder beneficiaries. Each remainder beneficiary is entitled to an equal share of the trust assets upon the death of Hannah Blumenthal.

Meyer Papermaster by letter requested his aunt, the trustee, to invest the assets of the trust in AAA bonds. When he received no reply, he brought this petition, which was later amended to request costs, travel, lodging, and meal expenses incurred by him while preparing for and attending the hearings regarding this matter.

The certified public accountant who prepared the annual reports requested by the court testified that in 1975 the banks and savings and loan associations paid 5 percent to 5¼ percent interest on savings accounts held by the trust and that the rate of return on the accounts was now 7 to 7½ percent. He testified that Northwestern National Bank of Minneapolis had a 3.2 percent return on trust investments during the period 1970 to 1975.

A trust administrator of the Northwestern National Bank testified that if the bank were appointed trustee the first year fees would total $1,000. He stated that the bank would probably place the assets in a common trust fund and would expect the earnings to be 7 to 9 percent. He admitted that over the last 5 years the return on such investments was only 3½ to 4 percent and 6 to 7 percent on bond trust funds.

Petitioner produced evidence that public utility bond yields were from 8 to 10 percent during the 1969 to 1975 period, and average yields on other bonds were 6.75 percent to 8.98 percent during the same period. He amended his petition to claim a deficiency of $5,715 in trust corpus which was allegedly caused by the trustee's fail-

ure to invest the trust assets properly. He further amended his petition alleging three improper disbursements of trust assets. The first was an April 1970 penalty-and-interest payment of $476.37 to the Internal Revenue Service for late payment of federal estate taxes on the decedent's estate. The second was a June 1969 payment for similar purposes to the Minnesota Commissioner of Taxation in the amount of $387.09. The third was a March 1971 payment of $1,520.40 for legal services rendered in probating the decedent's estate.

The trial court found, inter alia, that:

"* * * * *

"2. Mr. Papermaster claims that the Trustee should have invested the trust funds to earn a higher income, and asks that she be required to pay the difference between the actual income and six percent per annum. The Court finds that it is discretionary with the Trustee as to the proper investment of funds, and that the Trustee should not be surcharged for failure to earn a higher rate of return. The Court further finds that the trust assets are now being invested to get a higher rate of return which is as high as could reasonably be expected.

"3. Mr. Papermaster claims that the Trustee should pay the penalties incurred for late payment of the federal estate tax and the state inheritance tax. The Court finds that this delay was occasioned by the illness and death of Charles Bank who was the attorney probating the estate and that there was no neglect of duty by Mrs. Blumenthal in failing to see that these taxes were paid on their respective due dates.

"4. Mr. Papermaster claims that the Trustee should not have paid legal fees of $1,520.40. The Court finds that these fees were for charges properly made by the attorney who took over the probate of the estate from Charles Bank, and that they are in proper amount and were properly payable by the Trustee.

"5. Mr. Papermaster claims that the Trustee failed to file annual accounts. It is found that it was improper for the Trustee to fail to file annual accounts, but such accounts have been filed now and no action should be taken at this time by reason of the late filing of the accounts. The Trustee is directed to file annual accounts currently hereafter.

*     *     *     *     *     *

"8. Mr. Papermaster asks that his expenses be paid for traveling to and from Milwaukee and lodging in Minneapolis for the purpose of these hearings. The Court finds that expenses of this sort are not properly allowable under any circumstances, and particularly where the petitioning party is the unsuccessful litigant.

"9. Mr. Papermaster claims that Mrs. Blumenthal should be removed as Trustee and that the Northwestern Bank should be substituted as Trustee. The Court finds no valid reason for removing Mrs. Blumenthal as Trustee and substituting the Bank in her stead. The Court believes that it would be more expensive to have the Bank serve as Trustee and that the Bank would not be able to earn any better return than Mrs. Blumenthal is now earning on the assets of the trust."

The question therefore presented is whether the trial court abused its discretion by these findings.

■ The power of a district court to remove a trustee is contained in Minn.St. 501.43, which provides:

"Upon the complaint of any person interested in the execution of an express trust, and under such regulations as shall be established by the court for that purpose, it may remove any trustee who has violated or threatened to violate his trust, * * * or who for any other cause is deemed an unsuitable person to execute the trust."

While the determination of what constitutes sufficient grounds for the removal of a trustee is within the discretion of the court, "[c]ourts are more reluctant to remove a trustee who has been chosen by the settlor than one who is court-appointed." Bogert, Trusts and Trustees (2 ed.) § 527, p. 348.

■ Petitioner asserts that the trustee breached her trust by retaining the assets received from the estate of her sister in the form of investments in savings accounts. He contends both that savings accounts are improper trust investments and that the investments in the savings accounts failed to produce an adequate yield.

The Minnesota trust statutes applicable to this case [1] are silent as to the propriety of savings accounts as trust investments. Minn.St. 501.125, however, provides:

"In acquiring, investing, reinvesting, exchanging and managing property, a trustee is authorized to acquire every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, bonds, debentures and other individual or corporate obligations, and corporate stocks, which an ordinarily prudent person of discretion and intelligence, who is a trustee of the property of others, would acquire as such trustee."

At one time, it was generally held that the deposit of trust funds in a bank was an improper trust investment. 2 Scott, Trusts (3 ed.) § 180.4, p. 1458. Such deposits were viewed as unsecured loans to banks and therefore violated the rule prohibiting a trustee from lending trust funds without security. See, 3 Scott, Trusts (3 ed.) § 227.8, p. 1820. Today, the trend is to consider savings deposits and time deposits, especially when insured by the Federal Deposit Insurance Corporation (FDIC), to be proper trust investments. See, 2 Scott, Trusts (3 ed.) § 180.4, p. 1461.

Petitioner cites *St. Paul Trust Co. v. Kittson,* 62 Minn. 408, 65 N.W. 74 (1895), for the proposition that Minnesota law views savings accounts as improper permanent trust investments. In *Kittson,* however, this court held that the trial court was justified in approving a trust investment in certificates of deposit in a bank and in disapproving investments in other certificates of deposit issued by the executor as a trust company to itself as executor. Thus, contrary to petitioner's assertion, the implication of *Kittson* is that investments in certificates of deposit are not per se invalid trust investments.

■ Even if savings accounts in banks and savings and loan associations are not per se invalid trust investments, petitioner contends that the trustee committed a breach of trust by retaining the assets in these accounts rather than investing in long-term bonds. It is alleged that the bonds would have produced a greater yield than the savings accounts and that the trustee should be surcharged for the difference between the actual income from the savings account investments and 6 percent per annum. The trial court found that the trust assets were properly invested, that the trustee should not be surcharged, and that "the trust assets are now being invested to get a higher rate of return which is as high as could reasonably be expected."

At the first hearing, the trustee and her attorney made repeated offers for her resignation in favor of the Northwestern National Bank. In addition, she testified that she merely carried on the investments that she received from her sister, the decedent, and that the decedent had a preference for savings account investments and did not believe in speculative investments. The trustee believed she was carrying out her sister's wishes by retaining the trust assets in savings accounts. Furthermore, the trustee was serving without compensation, and the appointment of the designated successor trustee would have reduced the trust assets by $1,000 in administrative fees during the first year of the new trustee's administration. Evidence was submitted that the other two remainder beneficiaries had no objection to the manner in which the trustee was performing her duties. In light of all these factors, the trial court's exercise

1. In 1971, the Minnesota Legislature enacted the Minnesota Trustees' Powers Act. L.1971, c. 130 (codified at Minn.St. 501.64 to 67). The Act became effective on July 1, 1971. It allows a testator or settlor to incorporate by reference the trustee powers enumerated in the Act. One of the enumerated powers allows a trustee to deposit trust funds in a bank or state or Federal savings and loan association. See, Minn.St. 501.66, subd. 7.

of discretion in refusing to remove the trustee and appoint the successor trustee or to impose a surcharge is not an abuse of discretion.

Petitioner's contention that the trustee should be removed for failure to file annual accountings is based on the undisputed fact that the trustee failed to make such accountings until 1974. Pursuant to Minn.St. 501.34, a trustee is required to file accounts annually. The trustee admits that she failed to file annual accounts but contends that these accounts have now been filed and that the failure to file the accounts did not harm petitioner or the trust assets. The trial court made a similar finding and ordered the trustee to file such accounts annually in the future.

■ While these important and necessary statutory provisions requiring annual accounting were violated, the trial court did not abuse its discretion in failing to remove the trustee for inconsequential deviations from legal requirements in the past. The following statement from *In re Trust Created by Will of Bailey*, 241 Minn. 143, 151, 62 N.W.2d 829, 834 (1954), is applicable in the present case:

> "In passing upon an account of a trustee, much must be left to the sound judicial discretion of the trial court. While there are some deviations from the required statutory requirements in the preparation of these accounts, we are satisfied that, if they are corrected in the future, the rights of all parties can be adequately protected."

Petitioner further alleges that the trustee made three improper payments out of trust assets. Two of the payments were to the Internal Revenue Service and the Minnesota Commissioner of Taxation for late payment of Federal estate and state inheritance taxes on the decedent's estate. The trial court found that the trustee, who was also the executrix of the estate, was not negligent in failing to pay these taxes on their due dates, because the delay was due to the illness and death of the attorney who was probating the estate. Petitioner also claims that a payment for legal fees incurred in probating the estate was improperly paid out of trust assets. The trial court found that these fees were properly paid by the trustee.

■ While petitioner is correct in stating that a trust and an estate are separate legal entities, the trustee is correct in stating that upon the facts of this case the distinction is merely semantical. The assets of the estate became the assets of the trust. If these three payments were made out of the assets of the estate, the total assets of the trust would have been reduced by the amount of these payments. The net amount of the trust assets would have been the same whether these payments were made by the estate or the trust.

■ As to the claim that the trial court abused its discretion in denying petitioner's request for certain meal, travel, and lodging expenses and costs incurred by petitioner in pursuing his petition, Minn.St. 549.07 provides that "[i]n equitable actions, costs may be allowed or not * * *." In addition, Minn.St. 549.04 provides that "[i]n every action in a district court, the prevailing party * * * shall be allowed his disbursements necessarily paid or incurred." A court sitting as a court of equity, in its discretion, may determine which party is the prevailing party. *Haugland v. Canton*, 250 Minn. 245, 254, 84 N.W.2d 274, 280 (1957).

■ In the present case, the trial court denied the petition in all major respects, except that it found the trustee failed to file annual reports and ordered an accountant to prepare such reports. Therefore, petitioner cannot contend that he was the prevailing party. Furthermore, the trial court did not abuse its discretion in refusing to award costs and expenses to petitioner under either statutory provision.

The other alleged errors, including the claim that petitioner was denied due process, are frivolous and therefore need not be considered by this court.

Affirmed.