# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DOUGLAS W. DU PONT,        :
                                     :
                Petitioner,       :
                                     :
            v.                   :       **C.A. No. 12836-VCS**
                                     :
WILMINGTON TRUST COMPANY,   :
                                     :
               Respondent.     :

## MEMORANDUM OPINION

Date Submitted: August 28, 2017
Date Decided: October 6, 2017

Matthew P. D'Emilio, Esquire and Thomas A. Uebler, Esquire of Cooch and Taylor, P.A., Wilmington, Delaware, Attorneys for Petitioner.

Robert S. Saunders, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Attorney for Respondent.

**SLIGHTS, Vice Chancellor**

This case concerns the trusteeship of five "total return" unitrust trusts (the "Trusts"). Petitioner, Douglas W. du Pont ("Mr. du Pont" or "Petitioner"), is the current beneficiary of the Trusts. Respondent, Wilmington Trust Company ("Wilmington Trust" or "Respondent"), is the trustee of the Trusts.

In February 2016, Mr. du Pont requested that Wilmington Trust resign as trustee. Wilmington Trust refused. Mr. du Pont then filed a "Petition to Remove Wilmington Trust Company as Trustee and Appoint Charles Schwab Trust Company of Delaware as Trustee" ("Petition") with this Court. The Petition seeks an order removing Wilmington Trust as trustee pursuant to 12 *Del. C.* § 3327(3) and appointing a successor trustee—either Charles Schwab Trust Company of Delaware ("Charles Schwab") or a "suitable alternate successor trustee."[1] Wilmington Trust has filed a motion to dismiss the Petition pursuant to Court of Chancery Rule 12(b)(6).

For the reasons that follow, Respondent's motion to dismiss is GRANTED, and the Petition is dismissed with prejudice.

## I. BACKGROUND

The facts are drawn from allegations in the Petition, documents integral to the Petition and those matters of which the Court may take judicial notice. I have assumed as true all well-pled factual allegations in the Petition.

---

[1] Pet. ¶ 57; *id.* ¶¶ 47–56, 60.

1

## A. The Parties

Mr. du Pont is the current beneficiary of the Trusts. He is married to Sarah du Pont and has four children, all of whom are *sui juris*. Wilmington Trust is a Delaware non-depository trust company headquartered in Wilmington, Delaware, and is a wholly-owned subsidiary of M&T Bank Corporation ("M&T Bank"), a New York business corporation.

## B. The Trusts

The Trusts were created pursuant to four trust agreements and one will (collectively, the "Trust Agreements"). The Trust Agreements appoint Wilmington Trust as lone trustee of the Trusts, and Wilmington Trust has served in that role since the Trusts were created in the 1940s and 1950s. The Trust Agreements are silent regarding removal of the trustee or appointment of a successor trustee.

In 2013, Wilmington Trust agreed to petition the Court of Chancery to modify the Trust Agreements to insert provisions that authorize an "Investment Direction Advisor" to direct all investment decisions for the Trusts.[2] The modification was prompted in part because Mr. du Pont was dissatisfied with Wilmington Trust's administration of the Trusts. While Wilmington Trust did not

---

[2]  Pet. ¶ 26.

agree with Mr. du Pont's criticisms, it agreed to petition for the modification, which this court granted.

Under the modified Trust Agreements, Mr. du Pont is designated as the Investment Direction Advisor for the Trusts and Wilmington Trust is "relegated . . . to a purely administrative directed-trustee role."[3] In this reduced role, Wilmington Trust now "has no investment authority or discretion over the Trusts' assets."[4]

## C. Wilmington Trust's Alleged Misadministration of the Trusts

Petitioner alleges that "[f]or years, Wilmington Trust has improperly administered the Trusts, to the detriment of the Trusts and their beneficiaries."[5] As particular examples, Petitioner alleges:

- Wilmington Trust "miscalculat[ed] the amount of Mr. du Pont's unitrust distribution";

- There has been "minimal contact by trust advisers (few in-person meetings and infrequent contact)"; *and*

---

[3] Pet. ¶ 27; *see, e.g.*, Pet. Ex. A (Trust Agreement of Lammot du Pont dated July 18, 1941 (as modified)), ¶¶ 6–7 (creating "Investment Direction Advisor" role; delineating the powers and responsibilities of that role). The Trust Agreements, attached to the Petition as Exhibits A–D, are integral to the Petition and incorporated therein by reference. Accordingly, the Court may consider the Trust Agreements in deciding this motion to dismiss. *See In re Crimson Exploration Inc. S'holder Litig.*, 2014 WL 5449419, at *8 (Del. Ch. Oct. 24, 2014).

[4] Pet. ¶ 27; *see, e.g.*, Pet. Ex. A, ¶¶ 6–7.

[5] Pet. ¶ 22.

- Wilmington Trust rejected Mr. du Pont's "reasonable request in 2015 for money to cover tax liabilities."[6]

Petitioner further alleges, "Wilmington Trust's improper administration [of the Trusts] has resulted in a loss of confidence by the du Ponts in Wilmington Trust and, unfortunately, created hostility between [them]."[7]

### D. Wilmington Trust as Lender and Estate Planner

Apart from its role as trustee, Wilmington Trust has also acted as lender and estate planner to Mr. du Pont. "As lender, Wilmington Trust . . . overextended credit to Mr. du Pont, collateralized his personal assets, including his revocable trust and cash account, and reduced his unitrust payout."[8] When Mr. du Pont struggled to repay the Wilmington Trust loan, Wilmington Trust "caused [him] to liquidate low-basis assets to pay down a portion of the loan, resulting in millions of dollars of otherwise-unnecessary capital-gains tax."[9]

As estate planner, Wilmington Trust did not inform Mr. du Pont that the Trusts would bypass his wife upon his death. Based on Wilmington Trust's provision of incomplete or incorrect information, Mr. du Pont and his wife made "substantial irrevocable gifts . . . to trusts for their children naming Wilmington

---

[6] Pet. ¶ 23.

[7] Pet. ¶ 25.

[8] Pet. ¶ 31.

[9] Pet. ¶ 32.

Trust as trustee[] . . . ."[10] Mr. du Pont would not have made such gifts had Wilmington Trust advised him that his wife would not benefit from the Trusts after his death.

### E. Changes at Wilmington Trust Since the Creation of the Trusts

Petitioner alleges that "[t]he Wilmington Trust that is a party to this action is not the same Wilmington Trust that the du Ponts entrusted in the 1940s and 1950s to serve as trustee of the Trusts."[11] In the 1940s and 1950s, Wilmington Trust "was closely associated with the du Ponts."[12] And for many years thereafter, "Wilmington Trust [remained] an independent Delaware-based bank, managed, in part, by members of the du Pont family . . . ."[13]

In the wake of the 2008 financial crisis, Wilmington Trust's "business nearly collapsed, which led to federal-government investigations, lawsuits, and indictments . . . ."[14] Following the near-collapse of its business, Wilmington Trust was acquired by a New York-based bank—M&T Bank. Today, Wilmington Trust is a wholly-owned M&T subsidiary and its "chairman and most of its other

---

[10] *Id.*

[11] Pet. ¶ 33.

[12] Pet. ¶ 34.

[13] Pet. ¶ 35.

[14] Pet. ¶ 36.

directors are longtime M&T officers and directors."[15]  "Not a single member of the du Pont family remains on the [Wilmington Trust] board."[16]  Thus, Petitioner alleges, "Wilmington Trust's governance, business, culture, and du Pont relationship would be unrecognizable to the trustors of the Trusts. The Wilmington Trust once trusted by Mr. du Pont's forebears is gone."[17]

### F. This Litigation

In February 2016, Mr. du Pont requested that Wilmington Trust resign as trustee of the Trusts.  Wilmington Trust refused.  Mr. du Pont responded on October 19, 2016, by filing the Petition.  In his Petition, Mr. du Pont asks the Court to remove Wilmington Trust as trustee of the Trusts pursuant to 12 *Del. C.* § 3327(3) ("Section 3327(3)") and to appoint a successor trustee—either Charles Schwab or a "suitable alternate successor trustee."[18]  As grounds for removal, the Petition alleges that:

1. Since the creation of the Trusts and the appointment of Wilmington Trust as trustee, a substantial change in circumstances has occurred;

2. Wilmington Trust is unfit, unwilling, or unable to administer the Trusts properly; *and*

---

[15] Pet. ¶ 37.

[16] *Id.*

[17] Pet. ¶ 38.

[18] Pet. ¶ 57; *id.* ¶¶ 47–56, 60.

3. Hostility between Wilmington Trust and Mr. du Pont threatens the efficient administration of the Trusts.[19]

Wilmington Trust filed a motion to dismiss the Petition pursuant to Court of Chancery Rule 12(b)(6) on December 2, 2016. The Court heard oral argument on that motion on August 28, 2017.

## II.    ANALYSIS

"The standards governing a motion to dismiss for failure to state a claim are well settled: (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are 'well-pleaded' if they give the opposing party notice of the claim; (iii) the court must draw all reasonable inferences in favor of the nonmoving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[20]

As noted, I have accepted as true all well-pled factual allegations in Mr. du Pont's Petition and have drawn all reasonable inferences in his favor. Even so, for reasons I explain below, I cannot reasonably conceive how Section 3327(3) would warrant the removal of Wilmington Trust as trustee of the Trusts.

---

[19] Pet. ¶ 50.

[20] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

7

## A. Section 3327(3)

Section 3327(3) sets forth certain bases for judicial removal of a trustee despite the absence of a breach of trust; *i.e.*, judicial removal of a trustee even where the trustee has not violated a duty owed to the beneficiary.[21] Under Section 3327(3), the Court of Chancery may remove a trustee on the petition of a beneficiary if the court, "having due regard for the expressed intention of the trustor and the best interests of the beneficiaries," determines that, despite the absence of a breach of trust—

    (a)    there has been "a substantial change in circumstances"; *or*

    (b)    the trustee is unfit, unwilling, or unable to administer the trust properly; *or*

    (c)    "hostility between the trustee and beneficiaries . . . threatens the efficient administration of the trust."[22]

## B. No "Substantial Change in Circumstances"

Delaware courts have not construed the phrase "a substantial change in circumstances" within Section 3327(3)(a). There is, however, useful guidance in an official comment to Section 706 of the Uniform Trust Code ("UTC"), which

---

[21] *See* 12 *Del. C.* § 3581(a) (defining a "breach of trust" as "[a] violation by a trustee of a duty the trustee owes to a beneficiary").

[22] 12 *Del. C.* § 3327(3).

contains a removal provision very similar to Section 3327(3)(a).[23]  This official

comment explains that:

> Changed circumstances justifying removal of a trustee might include a substantial change in the character of the service or location of the trustee. A corporate reorganization of an institutional trustee is not itself a change of circumstances if it does not affect the service provided the individual trust account.[24]

With this explanation in mind, it is not reasonably conceivable that there has

been a "substantial change in circumstances" that would justify the removal of

Wilmington Trust as trustee.  *First*, Petitioner's allegations regarding "federal-

government investigations, lawsuits, and indictments"[25]—as pled—do not allow a

reasonable inference of a substantial change in Wilmington Trust's trustee services

(whether in character or otherwise).  Petitioner does not allege (or even suggest)

any connection between Wilmington Trust's legal tribulations and its delivery of

trustee services.  Nor does Petitioner allege that any of the individuals investigated,

sued or indicted were or are associated with Wilmington Trust's trust services

---

[23] Specifically, UTC § 706(b)(4) authorizes judicial removal of a trustee where there has been "a substantial change of circumstances . . . , [and] the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable . . . successor trustee is available.  Unif. Trust Code § 706(b)(4) (amended 2010).  This court has previously consulted the Uniform Trust Code to aid its interpretation of Delaware's Trust Code.  *See, e.g.*, *In re Mary R. Latimer Trust,* 78 A.3d 875, 884 (Del. Ch. 2013) (comparing UTC and Delaware Trust Code provisions concerning judicial modification of non-charitable trusts).

[24] UTC § 706 cmt.

[25] Pet. ¶ 36.

business (or have been involved with the Trusts in *any* capacity).  Consequently, the Petition offers no sound basis to infer the existence of a connection between any "investigations, lawsuits, and indictments" involving Wilmington Trust and its role as trustee.[26]

*Second*, M&T's 2011 acquisition of Wilmington Trust does not constitute a "substantial change in circumstances" for purposes of Section 3327(3)(a). Petitioner does not allege how (if at all) M&T's acquisition of Wilmington Trust has "affected the service [that Wilmington Trust] provide[s] [the Trusts]."[27]  Nor does Petitioner allege that there has been a "substantial change" in Wilmington Trust's location that has rendered the trustee less available to him.[28]  Indeed, the Petition specifically states that "Wilmington Trust . . . is a Delaware non-depository trust company with its principal place of business in Wilmington, Delaware."[29]  Accordingly, I cannot reasonably conceive how M&T's acquisition

---

[26] Pet. ¶ 36. *See In re Morton's Rest. Gp., Inc. S'holders Litig.*, 74 A.3d 656, 660 (Del. Ch. 2013) (On a motion to dismiss under Chancery Rule 12(b)(6), the court need only "accept those reasonable inferences that flow "logically" from the non-conclusory facts pled in the Complaint[;] . . . [it need not] accept 'every strained interpretation of the allegations proposed by the plaintiff.'" (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001))).

[27] UTC § 706 cmt. ("A corporate reorganization of an institutional trustee is not itself a change of circumstances if it does not affect the services provided the individual trust accounts.").

[28] *Id.*

[29] Pet. ¶ 2.

10

of Wilmington Trust constitutes a "substantial change in circumstances" warranting its removal as trustee of the Trusts.

*Finally*, the 2013 modifications to the Trust Agreements do not constitute a "substantial change in circumstances" that would warrant removal. Under the modified Trust Agreements, the Trusts are administered as follows:

- Wilmington Trust, as trustee, is responsible for calculating a four-percent annual unitrust payment for each of the five Trusts and distributing those payments to Mr. du Pont in monthly installments.

- Wilmington Trust "has no investment authority or discretion over the Trusts' assets."[30] Such authority (and discretion) is instead reposed in the Trusts' Investment Direction Advisor—currently Mr. du Pont.[31]

- Mr. du Pont, in his capacity as Investment Direction Advisor, directs Wilmington Trust as to how the Trusts' assets are to be deployed.[32]

- Wilmington Trust, as "directed trustee," carries out such directions, being obligated to do so under the modified Trust Agreements.[33]

- Wilmington Trust, as trustee, retains limited (but sole) discretion under two of the Trust Agreements (as modified) to make

[30] Pet. ¶ 27.

[31] *See, e.g.*, Pet. Ex. A, ¶¶ 6–7; Pet. Ex. B (Trust Agreement of Margaret F. du Pont dated May 13, 1954 (as modified)), ¶¶ 7–8; Pet. Ex. C (Trust Agreement of Margaret F. du Pont dated July 8, 1954 (as modified)), ¶¶ 7–8; Pet Ex. D (Will of Lammot du Pont dated Oct. 1, 1954 (as modified)), at art. 13.

[32] *See, e.g.*, Pet. Ex. A, ¶¶ 6–7; Pet. Ex. C, ¶¶ 7–8; Pet. Ex. D, at art. 13.

[33] Pet. ¶ 27; *see, e.g.*, Pet. Ex. A, ¶ 6(b)–(e); Pet. Ex. C, ¶ 7(b)–(e).

payments of the corresponding Trusts' principal to Mr. du Pont as necessary to meet his and his dependents' "essential needs"; *provided* that Wilmington Trust makes a prior determination that "the [trust] funds payable . . . for the benefit of [Mr. du Pont], together with the funds available to [him] from other sources, are insufficient to provide properly for the essential needs . . . of [Mr. du Pont] and his . . . dependents . . . ."[34]

The 2013 modifications to the Trust Agreements unquestionably "affect[] the service [that Respondent] provide[s] [the Trusts]."[35] The modified Trust Agreements limit Wilmington Trust's discretion and narrow the scope of its role. Indeed, the trustee's functions under the modified instruments are principally ministerial in nature (albeit not exclusively so). I cannot reasonably conceive how this change in Wilmington Trust's role, instigated by Mr. du Pont, warrants its removal as trustee.

Under Section 3327(3), the court must "hav[e] due regard for the expressed intention of the trustor . . . ."[36] Accordingly, insofar as the modified Trust Agreements keep intact the arrangement contemplated by the original instruments, I must have "due regard" for that arrangement.[37] Here, the Trust Agreements

---

[34] Pet. Ex. A, ¶ 3; Pet. Ex. D, at art. 9.

[35] UTC § 706 cmt.

[36] 12 *Del. C.* § 3327(3).

[37] *See In re Trust Under Will of Flint for the Benefit of Shadek*, 118 A.3d 182, 194 (Del. Ch. 2015) (Different jurisdictions have taken different positions on "whether the wishes of living beneficiaries should prevail over the wishes of a dead settlor . . . . In Delaware, the settlor's [expressed] intent controls.").

12

expressly appoint Wilmington Trust as trustee of the Trusts and are silent as to removal of the trustee. That being so, I cannot reasonably conceive how removing Wilmington Trust as trustee of the Trusts is consistent with a "due regard" for the trustors' *expressed* intention. The 2013 modifications to the Trust Agreements do not alter that intent or otherwise justify the removal of Wilmington Trust as trustee.

### C. It is Not Reasonably Conceivable That Wilmington Trust is Unwilling, Unfit or Unable to Administer the Trusts Properly.

Based on the Petition's well-pled factual allegations, it is not reasonably conceivable that Wilmington Trust is unwilling, unfit or unable properly to perform the functions assigned to it under the modified Trust Agreements. *First*, the Petition contains no well-pled allegations that Wilmington Trust is *unwilling* properly to perform its present functions. "Unwillingness" includes cases "where the trustee refuses to act" or otherwise exhibits "a pattern of indifference to some or all of the beneficiaries."[38] Here, the Petition does not allege that Wilmington Trust has refused to perform the functions assigned to it under the modified Trust Agreements. The fact that Wilmington Trust, in the exercise of its discretion, rejected Mr. du Pont's "reasonable request in 2015 for money to cover tax

---

[38] UTC § 706 cmt.

liabilities"[39] does not constitute an "unwillingness" to perform. Wilmington Trust had no absolute obligation to accommodate that request and, in fact, could not accommodate it without first determining that Mr. du Pont lacked sufficient other funds to cover his tax liabilities.[40] Of course, Mr. du Pont does not allege that he was without sufficient other funds to cover those liabilities at the time he requested that the trustee pay them.

Moreover, the Petition falls well short of alleging that Wilmington Trust's conduct (as alleged in the Petition) amounts to "a pattern of indifference"[41] to Mr. du Pont. In this regard, Petitioner's conclusory allegation of "minimal contact by trust advisers" is unavailing.[42] And his allegation that Wilmington Trust once miscalculated his unitrust distribution, without more, does not suggest a "*pattern* of indifference"[43] on Wilmington Trust's part.

---

[39] Pet. ¶ 23.

[40] *See* Pet. Ex. A, at ¶ 3; Pet. Ex. D, at art. 9.

[41] UTC § 706 cmt.

[42] Pet. ¶ 23. *See Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996) ("[C]onclusions [in a complaint] will not be accepted as true without specific allegations of fact to support them.") (internal quotation marks and citation omitted); *cf. Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon*, 231 S.W.3d 158, 181 (Mo. Ct. App. 2007) (A "lack of meetings between [co-trustees]" did not establish indifference to the beneficiary absent evidence that "provisions of the Trust went unimplemented.").

[43] UTC § 706 cmt. (emphasis added).

*Second*, the Petition contains no well-pled allegations that Wilmington Trust is *unable* properly to perform the functions assigned to it under the modified Trust Agreements. Here again, the fact that Wilmington Trust once miscalculated Mr. du Pont's unitrust distribution does not support an inference of general inability.[44]

*Finally*, nothing alleged in the Petition would allow a reasonable inference that Wilmington Trust is *unfit* to serve as trustee. While the Petition makes much of Wilmington Trust's (separate) role as lender and estate planner to Mr. du Pont, it does not allege how—if at all—that arrangement has interfered with Wilmington Trust's proper performance of its functions under the modified Trust Agreements. Nor has Petitioner well pled a breach of trust on Respondent's part, *viz.*—that Wilmington Trust committed a breach of trust by acting as lender and estate planner to Mr. du Pont while serving as trustee.[45] Trustees are not prohibited from

---

[44] *See* Walter L. Nossaman & Joseph L. Wyatt, Jr., *Trust Adminstration and Taxation* § 26.11[2] (2017) ("Mistakes in judgment, honestly made, are not ground for removal [of a trustee], unless the mistakes are of such character or recur so frequently as to suggest lack of competence to administer the trust . . . ." (citing, *inter alia*, *Will of Gershcow*, 261 N.W.2d 335, 339–340 (Minn. 1977), *Manchester v. Cleveland Trust Co.*, 168 N.E.2d 745 (Ohio Ct. App. 1960) and *Sternberg v. St Louis Union Trust Co.*, 163 F.2d 714 (8th Cir. 1947) (footnotes omitted))).

[45] Ostensibly, if Petitioner believed that Wilmington Trust committed a breach of trust, he would have sought Wilmington Trust's removal as trustee of the Trusts under 12 *Del. C.* § 3327(1), which authorizes judicial removal of a trustee where "[t]he trustee has committed a breach of trust." *Id.* In any event, Wilmington Trust's conduct as lender and estate planner bears on its fitness *vel non* as trustee only insofar as such conduct affects its servicing of the Trusts or the Trusts' property. *See* George Gleason Bogert et al., *The Law of Trusts and Trustees* § 544 (3d ed. 1977 & Supp. 2016) ("Direct business dealings" between trustee and beneficiary impose fiduciary duties on the trustee "in so far

15

dealing directly with beneficiaries, provided the beneficiary voluntarily consents to the transaction after full disclosure of all relevant information.[46] Where a trustee lends money to a beneficiary, the transaction also must be fair to the beneficiary.[47]

Here, Wilmington Trust could not have acted as lender to Mr. du Pont except upon his express request and consent. That consent was given. And Petitioner has not pled that Wilmington Trust failed fully to disclose all relevant information before making the loan. Nor has he *well* pled that Wilmington Trust's

---

as [such dealings] affect th[e] [trust] relationship or the property involved in it, but not if they are concerned with property owned by either party which is unrelated to the trust . . . ."); *Seven G Ranching Co. v. Stewart Title & Trust of Tucson*, 627 P.2d 1088, 1090 (Ariz. Ct. App. 1981) ("When [an institutional] trustee 'wears two hats' . . . *and the transaction involved affects the res of the trust*, it cannot escape its fiduciary duties by claiming it was acting in its non-trustee capacity.") (emphasis added); *cf. Matter of Irrevocable Inter Vivos Trust Established by R. R. Kemske*, 305 N.W.2d 755, 762 (Minn. 1981) ("The fact that a bank serves in a dual capacity [as trustee and executor], and as trustee may have to question its own conduct as executor, does not alter the trustee's duty to its beneficiaries."). Here, for reasons explained below, it is at least reasonably conceivable that Wilmington Trust's conduct as lender affected the Trusts' property. Petitioner has not well pled, however, that Wilmington Trust's conduct as estate planner has affected its servicing of the Trusts or the Trusts' property. I have, nevertheless, assumed, *arguendo*, that *some* connection between Wilmington Trust's estate planning and trustee services may have been in play.

[46] *See Hardy v. Hardy*, 2014 WL 3736331, at *8 (Del. Ch. July 29, 2014) ("Self-interested transactions by fiduciaries are not prohibited altogether, but require the beneficiary's voluntary consent to the transaction after full disclosure."); Restatement (Third) of Trusts § 78(3) (2007) ("[A] trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter.").

[47] *See* Restatement (Third) of Trusts § 78 cmt. g. (explaining that, in this context, a "fair" transaction is one "for fair and adequate consideration or that . . . is consistent with the beneficial interests of the beneficiary or beneficiaries in question").

16

loan terms were unfair. His conclusory allegation that Wilmington Trust "overextended credit to [him]"[48] does not support a reasonable inference of unfairness. Nor can the Court reasonably infer that it was unfair for Wilmington Trust to "collateralize[] [Mr. du Pont's] personal assets"[49] to secure the loans it made to him. Lenders often require that individual borrowers pledge collateral to secure their loan obligations; this is a common practice in arm's-length lending transactions. In any event, Mr. du Pont does not allege that Wilmington Trust somehow deviated from its typical lending practices when it made the loans to him, nor does he allege that the bank took more collateral than necessary to secure the loans.

Similarly, the fact that Wilmington Trust (as lender) "caused [Petitioner] to liquidate low-basis assets to pay down a portion of [his] loan"[50] does not support an inference of unfairness that would justify removal. That a lender expects the borrower to repay the loan on the terms agreed to is hardly remarkable and

---

[48] Pet. ¶ 31. *See Solomon*, 672 A.2d at 38 ("[C]onclusions [in a complaint] will not be accepted as true without specific allegations of fact to support them.") (internal quotation marks and citation omitted). It is unclear what exactly Petitioner means when he alleges that Wilmington Trust "overextended credit to [him] . . . ." Pet. ¶ 31. Insofar as Mr. du Pont believes that Wilmington Trust knew or should have known that he would be unable to repay his loans, he has not expressed that belief in his Petition.

[49] Pet. ¶ 31.

[50] Pet. ¶ 32.

17

certainly is no evidence of unfair lending practices. Petitioner has not advanced any allegation(s) or credible arguments to the contrary.

Finally, the fact that Wilmington Trust's conduct (as lender) may have "reduced [Petitioner's] unitrust payout" does not support an inference of unfairness.[51] I note that the Petition does not explain *how* this reduction was accomplished, which makes it difficult to assess how this allegation supports Petitioner's claim for removal.[52] As best as I can tell, it appears that the reduction was incidental to the secured credit arrangement between Wilmington Trust and

---

[51] Pet. ¶ 31 ("As lender, Wilmington Trust overextended credit to Mr. du Pont, collateralized his personal assets, including his revocable trust and cash account, and reduced his unitrust payout.").

[52] For instance, Petitioner does not allege that he pledged his beneficial interest in the Trusts to Wilmington Trust to secure his loan obligations—an action that would likely violate the spendthrift provisions in the Trust Agreements. *See* Pet. Ex. A, ¶ 4 ("The interest of any beneficiary hereunder, in either the income or principal of any trust hereunder, shall not be . . . assigned or transferred by such beneficiary . . . ."); Pet. Ex. B, ¶ 5 (same); Pet. Ex. D, at art. 10 (same); Restatement (Third) of Trusts § 58 cmt. c (2003) ("A spendthrift restraint prevents the transfer of a trust beneficiary's interest to another, whether . . . by gift, sale, or exchange, or as security for a new or existing debt."). Absent such an allegation, the Court cannot reasonably infer that the parties took such action. *See Malpiede*, 780 A.2d at 1083. I also note that the modified Trust Agreements specifically empower the Trusts' Investment Direction Advisor (*i.e.*, Mr. du Pont) "to borrow from the Trustee itself and any of its affiliates and to mortgage, pledge or encumber such portion of the Trust property as may be required to secure any loans or indebtedness . . . ." Pet. Ex. A, ¶ 6(c); Pet. Ex. B., ¶ 7(c) (same); Pet. Ex. D, at art. 13(c). If Petitioner (as the Trusts' Investment Direction Advisor) borrowed money from Wilmington Trust, and collateralized such borrowing(s) with property of the Trusts, such an arrangement could then reduce the net income of one or more of the Trusts. And such a reduction would, in turn, reduce Petitioner's unitrust payout. None of this has been pled, however.

Petitioner.[53] Yet the existence of such an arrangement, without more, does not support an inference of unfairness.

With regard to Wilmington Trust's role as estate planner, Wilmington Trust likewise could not have assumed that role except upon Mr. du Pont's express request and consent. That consent was given. Mr. du Pont alleges, however, that "Wilmington Trust did not inform [him] that the Trusts would bypass his wife at his death" which, in turn, caused him and his wife to make "substantial irrevocable gifts . . . to trusts for their children naming Wilmington Trust as trustee[]."[54] He further alleges that he and his wife would not have made such gifts had they known that she would not benefit from the Trusts after his death. To be sure, if Wilmington Trust as estate planner knew or should have known that the Trusts would bypass Petitioner's wife upon his death, and knew or should have known that Petitioner did not appreciate that fact (and its relevance), it should have disclosed that fact to Petitioner.[55]

---

[53] As noted in footnote 52, *supra*, the reduction in Petitioner's unitrust payout may be attributable to Petitioner's having taken certain actions in his capacity as the Trusts' Investment Director Advisor. Again, the Petitioner's lack of well-pled facts leaves much room for speculation but ultimately renders the Petition inadequate to provide notice of the claims.

[54] Pet. ¶ 32.

[55] *See Hardy*, 2014 WL 3736331, at *8 (requiring disclosure of conflict transactions).

Here, however, the Petition contains no well-pled factual allegations regarding the nature of the estate planning services that Mr. du Pont and his wife sought from Wilmington Trust—or what they communicated to Wilmington Trust about their estate planning goals. Consequently, the Court is unable to infer that Wilmington Trust knew or should have known the relevance of the fact that the Trusts would bypass Petitioner's wife upon his death.

Even assuming, *arguendo*, that Wilmington Trust knew or should have known the relevance of that fact to Petitioner's estate planning goals, but negligently failed to disclose it, the Court still cannot reasonably conceive how that would warrant Wilmington Trust's removal as trustee of the Trusts. This court "may only remove a trustee 'who fails to perform his duties [as trustee] through more than mere negligence.'"[56] Here, the Petition does not set forth well-pled factual allegations that would allow for a reasonable inference that Wilmington Trust (as estate planner or trustee) knowingly or even recklessly withheld relevant information from Petitioner. Consequently, the Court cannot reasonably infer that Wilmington Trust's conduct as estate planner renders it unfit to serve as trustee of the Trusts.

---

[56] *In re Unfunded Ins. Trust Agreement of Capaldi*, 870 A.2d 493, 495–96 (Del. 2005).

**D. It is Not Reasonably Conceivable That Hostility Between Wilmington Trust and Mr. du Pont Threatens the Efficient Administration of the Trusts.**

Petitioner asserts that "Wilmington Trust's improper administration of the Trusts has resulted in a loss of confidence by the du Ponts in Wilmington Trust and, unfortunately, created hostility between [them]."[57] Yet "[a] mere lack of confidence in a trustee by the beneficiaries, or the existence of friction between them, is not a sufficient ground for removal of a trustee. To warrant removal, the friction or hostility must be of such a nature as to make it impossible for the trustee to properly perform his duties."[58]

Here, the Petition contains no allegations from which the Court can infer that there is such hostility between Mr. du Pont and Wilmington Trust "as to make it impossible for [Wilmington Trust] to properly perform [its] duties" under the modified Trust Agreements.[59] Assuming, *arguendo*, that there is *some* hostility between Mr. du Pont and Wilmington Trust, it does not follow that such hostility

---

[57] Pet. ¶ 25.

[58] *Vredenburgh v. Jones*, 1980 WL 6786, at *2 (Del. Ch. June 13, 1980).

[59] *Id.* Indeed, the Petition's allegations of hostility are conclusory in every sense of that word. *See, e.g.*, Pet. ¶ 25 ("Wilmington Trust's improper administration [of the Trusts] has resulted in a loss of confidence by the du Ponts in Wilmington Trust and, unfortunately, created hostility between [them].").

would prevent Wilmington Trust from properly performing its trustee duties.[60] Stated in the parlance of Rule 12(b)(6), it is not reasonably conceivable that hostility between Wilmington Trust and Mr. du Pont threatens the efficient administration of the Trusts.

## III. CONCLUSION

For the foregoing reasons, Petitioner has failed to state a claim under 12 *Del. C.* § 3327(3) to have Wilmington Trust removed as trustee of the Trusts. Accordingly, Respondent's motion to dismiss is GRANTED.[61]

**IT IS SO ORDERED.**

---

[60] For instance, it is not reasonably conceivable that periodic squabbles between Mr. du Pont and Wilmington Trust regarding trust distributions would prevent Wilmington Trust from properly performing its "purely administrative directed-role," Pet. ¶ 27, or any of its other assigned roles. *See Broeker v. Ware*, 29 A.2d 591, 598 (Del. Ch. 1942) ("[M]ere differences of opinion [between trustee and beneficiary] are not sufficient to justify removal [of the trustee]."); *In re Roberts' Estate*, 35 N.W.2d 756, 756 (Iowa 1949) (Mere "dissatisfaction on the part of [the beneficiary] because the trustee declined to make disbursements requested by [the beneficiary] . . . [is] insufficient to justify the removal of the trustee."); Restatement (Third) of Trusts § 37 cmt. e(1) (2003) ("Beneficiaries may be resentful . . . of reasonable exercise of a trustee's discretion with regard to matters of [trust] administration . . . . Such resentment ordinarily does not warrant removal of the trustee[.]").

[61] Here, Mr. du Pont has opted to stand on the allegations in his Petition; he did not amend or move to amend his Petition on or before the due date for his answering brief in opposition to Respondent's motion to dismiss. Stipulation and Order Governing Briefing on Resp't's Mot. to Dismiss ¶ 2 (Dec. 12, 2016). Consequently, Mr. du Pont may not now amend or move to amend his Petition, which is dismissed with prejudice. *See* Ct. Ch. R. 15(aaa).